**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Christopher GENNUSO,
Defendant–Appellant.**

**No. 91–2263.**

United States Court of Appeals,
Tenth Circuit.

June 23, 1992.

David L. Plotsky, Albuquerque, N.M., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., Robert J. Baca, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before ANDERSON and EBEL, Circuit Judges, and VAN SICKLE, District Judge.*

EBEL, Circuit Judge.

In this appeal, we revisit the issue of how to measure "loss" caused by fraud under the Sentencing Guidelines. Appellant Richard C. Gennuso was convicted of fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 2. On appeal, he argues that the district court calculated loss incorrectly, resulting in a longer sentence than he deserved. Because we conclude that the district court calculated the loss correctly, we affirm.

Gennuso and a business partner, Richard D. Thompson, owned and operated a telemarketing company, Aries International ("Aries"). Aries sold water purification systems at prices much greater than wholesale. In order to induce victims to buy the water purification systems, employees of Aries falsely told the victims that they would be entitled to one of four prizes if they purchased a system. Aries employees represented to each victim that he or she had an equal chance at winning each prize:[1] a Jeep Cherokee, a lifetime of vacations, $2,500 in cash, or a 46–inch big screen television. In fact, the sole prize awarded was the "lifetime of vacations," which consisted only of a listing of timeshare condominiums. Participants could stay free at any condominium in the listing, provided they attended a sales pitch to purchase a timeshare when they arrived. Furthermore, participants had to pay for their own travel and food expenses. Thus, the promise of three nonexistent prizes and one misleading one induced victims to purchase a water purification system.

The United States brought a thirteen-count indictment against the appellant in the United States District Court for the District of New Mexico. The appellant entered into a plea bargain in which he agreed to plead guilty to one of the thirteen counts in exchange for the government's nonbinding recommendation pursu-

---

* The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. The record does not indicate explicitly that the victims were told that they had an equal chance at winning each prize, but counsel for the appellant conceded at oral argument that Aries employees made such a representation to potential victims.

ant to Fed.R.Crim.P. 11(e)(1)(B) that probation constituted an appropriate sentence. In addition, the government stipulated that the loss to the victims totalled no more than $7,850, the amount of Aries' net profits.

In the presentence report, however, the probation officer disagreed with the prosecution's calculation of the loss. The probation officer computed the loss by subtracting the wholesale cost of the water purification system ($50) and of the vacation package ($30) from the price each victim paid ($400), resulting in a net loss of $320 per victim. Aries sold approximately 150 water purification systems; thus, the probation officer concluded that the victims suffered an aggregate loss of $48,000.

The appellant filed objections to the presentence report. The district court nonetheless adopted the probation officer's findings and used the $48,000 loss figure rather than the $7850 loss figure. Using the probation officer's method of calculation increased the appellant's offense level by three steps over that if the plea agreement's method had been used. *See* U.S.S.G. § 2F1.1(b)(1). The district court sentenced the appellant to an eighteen-month term of imprisonment, the minimum permitted under the Guidelines.[2]

The appellant brought this appeal challenging his sentence pursuant to 18 U.S.C. § 3742. We have jurisdiction pursuant to 28 U.S.C. § 1291.

U.S.S.G. § 2F1.1 governs fraud-type offenses. Under this section, the amount of loss inflicted is one factor to be considered in calculating the base offense level. The section cross-references section 2B1.1 for measuring loss. *See* U.S.S.G. § 2F1.1, comment. (n. 7). The Commentary to section 2B1.1 defines "loss" as "the value of the property taken." U.S.S.G. § 2B1.1, comment. (n. 2). As we previously held in *United States v. Smith*, 951 F.2d 1164

(10th Cir.1991), in calculating loss, the district court should use "the net value, not the gross value, of what was taken." *Id.* at 1167; *see also United States v. Schneider*, 930 F.2d 555, 558 (7th Cir.1991); *cf.* U.S.S.G. § 2F1.1, comment. (n. 7(a)) (1991) (1991 Guidelines state that "[i]n a case involving a misrepresentation concerning the quality of a consumer product, the loss is the difference between the amount paid by the victim for the product and the amount for which the victim could resell the product received").

Our task is to determine the actual net loss to each victim. In so doing, it is helpful to refer to the two methods most commonly used to compute civil damages for fraud: the "out of pocket" method and the "benefit of the bargain" method. Under the out of pocket method, damages equal "the difference between the value of what [the victim] has parted with and the value of what he has received." W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser & Keeton on the Law of Torts* ch. 18 § 110, at 767 (5th ed. 1984). Under the benefit of the bargain method, damages equal "the difference between the actual value of what [the victim] has received and the value that it would have had if it had been as represented." *Id.* at 768.

■ In this case, the out of pocket rule corresponds more closely with the definition of loss in the Guidelines. *Cf.* U.S.S.G. § 2F1.1, comment. (n. 7(a)) (1991) (1991 Guidelines state that in consumer fraud case, loss equals difference between amount paid and value received). In essence, each victim gave up $400 and received in return goods which the victim could, in theory, sell for a certain amount. Assuming a victim did so, "the property taken," U.S.S.G. § 2B1.1, comment. (n. 2), equals the amount the victim gave up decreased by the value of the property the victim received in return. The district

---

**2.** The district court sentenced the appellant pursuant to the 1990 Sentencing Guidelines Manual. Therefore, unless otherwise indicated, all discussion of the Guidelines in this opinion refer to the 1990 Guidelines rather than the 1991 Guidelines.

court valued the items received by each victim at the wholesale cost of each item ($50 for the water purification system and $30 for the timeshare list).

 The appellant argues that the court should have used the manufacturer's suggested retail price ($598) as the value of the system and that the value of the timeshare list depends on how much an individual used it. Therefore, the appellant argues, the victims actually suffered no loss. We disagree. The measure of the value of the goods received is the fair market value. *Cf.* U.S.S.G. § 2B1.1, comment. (n. 2) (valuing property taken by fair market value). The fact that the manufacturer of the water purification system recommended a price twelve times the wholesale price does not necessarily determine the fair market value. There is nothing in the record before us to show that the $598 recommended retail price for the water purification system is a realistic price. To the contrary, the wholesale price of $50 may be a more realistic indicia of value because there were actual sales of water purification systems unadorned with phony prize incentives at that price between the defendant and the manufacturer. The wholesale price of $30 for the list of timeshare condominiums also seems as reliable an indicia of fair market value as any other in this record. We review the district court's factual findings in support of its offense level calculation under a clearly erroneous standard. *Smith*, 951 F.2d at 1166. Although we might quibble with the precise values assigned by the district court, they are certainly defensible and therefore are not clearly erroneous. *Cf.* U.S.S.G. § 2F1.1, comment. (n. 8) ("amount of loss need not be precise" and "court need only make a reasonable estimate of the range of loss").

In holding that the district judge used the correct method to compute loss, we do not mean to imply that the benefit of the bargain method or some other approach may never be used. Instead, we hold merely that the out of pocket method adequately measures loss in this case.

Finding no error in the district court's measure of the victims' loss and therefore no error in the sentence imposed, we accordingly AFFIRM.