**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Reginald COLEMAN, Defendant–**
**Appellant.**

No. 96–1823.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 11, 1997.

Decided March 11, 1998.

Krishna S. Dighe (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Jonathan Epstein (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before: MERRITT, JONES, and NORRIS, Circuit Judges.

JONES, J., delivered the opinion of the court. MERRITT, J. (pp. 622–623), delivered a separate concurring opinion. NORRIS, J. (pp. 623–624), delivered a separate dissenting opinion.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant Reginald Coleman appeals the sentence imposed following his plea of guilty to distribution of a controlled substance (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). Coleman contends that the district court erred in concluding that it lacked the legal authority to depart downward on the ground of the government's allegedly improper investigatory techniques. We hold that *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), a decision of which the district court did not have the benefit at the time of the sentencing, makes clear that a trial judge cannot categorically exclude any non-prohibited factors from consideration for a downward departure. We accordingly vacate the sentence and remand for re-sentencing.

## I. Facts

In December of 1994, Defendant Reginald Coleman was approached by an undercover agent for the Bureau of Alcohol Tobacco and Firearms ("ATF"). The agent, Special Agent Joseph Secrete, was conducting an investigation in which he posed as a successful businessman and approached ex-felons as they were lawfully reporting to their parole office. According to the government, Secrete would receive a tip that certain individuals may be engaging in criminal activity who were on parole for state convictions, and whose listed addresses were not accurate. Agent Secrete would then obtain a photograph of the individual and the location where the individual reported to a parole officer. After identifying the individual, Agent Secrete would approach the individual as he was leaving his parole office. Coleman claims that Secrete would subsequently give targeted parolees a business card, and befriend such individuals by offering rides, trips, jobs and other business opportunities. Secrete would then offer to deal in illegal narcotics and/or firearms with the individual.

Apparently, all of the suspects targeted for investigation were African–American.[1] On five separate occasions, Coleman delivered cocaine base to Agent Secrete.

On September, 7, 1995, Coleman was indicted on five counts of distribution of a controlled substance under 21 U.S.C. § 841(a)(1). Pursuant to a Rule 11 plea agreement, Coleman pleaded guilty to two counts. The other counts were dismissed. On May 21, 1996, after his conviction, Coleman filed a motion for a downward departure arguing that his offenses were committed due to the improper investigative technique of the ATF, by targeting and inducing parolees to commit crimes and specifically targeting only African–Americans. Coleman asserted that these factors removed the case from the "heartland" of drug offenses. The district court found that Coleman's argument was not a sentencing issue, but rather a selective prosecution issue and thus an improper legal basis for a downward departure. Consequently, the district court sentenced Coleman to a term of 100 months imprisonment, 4 years supervised release and a mandatory special assessment of $100.00. This timely appeal followed.

## II. Discussion

■■■■ Generally, a court's failure to exercise its discretion and grant a downward departure is not reviewable. *See, e.g., U.S. v. Landers,* 39 F.3d 643, 649 (6th Cir.1994). An appellate court may only review a denial of a motion for a downward departure if the district court judge "incorrectly believed that he lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." *Id.* (citation omitted). Here, the district court believed that it lacked the authority and discretion to depart downward. The district court repeatedly stated that it believed Coleman's motion was a selective prosecution issue, rather than an issue to be determined in a motion for a downward departure.[2] J.A. at

1. According to the government, there were several motions by different defendants attacking this investigative technique. In addition, the technique prompted the Federal Defender's Office to conduct a survey of all such cases in the Eastern District of Michigan.

2. For example, the district judge stated, "the problem I have with the motion ... is that it's

## 619

119–20. The district court further concluded that because Coleman was complaining only about investigatory techniques, it did not "see a legal basis for using [investigatory techniques] as a downward departure here." J.A. at 120. Indeed, even in the passage cited by the dissent, it is clear that the district court was far more concerned with the procedural posture of the claim rather than whether there was sufficient evidence to support a downward departure, noting that even if there were hard evidence of improper investigatory techniques, it still would not be an "issue" which would entitle the defendant to a downward departure. J.A. at 120. Viewing the district court's statements in their entirety, it is apparent that the district court believed that Coleman's downward departure arguments could not be brought at sentencing and that it did not have the authority and discretion to seriously consider the claims at that time. Accordingly, we may review the district court's decision.

### A. Standard of Review

■ We review a district court's belief that it lacked the authority for a downward departure under the Sentencing Guidelines under an abuse of discretion standard. *Koon*, 518 U.S. at 98–102, 116 S.Ct. at 2047–48. Thus, we note that although a determination of the permissible factors a court may consider in departing downward under any circumstances, is a question of law and we are not required to defer on that point, the abuse of discretion standard includes review to determine whether a court was guided by an erroneous legal conclusion. *Id.* at 98–100,

116 S.Ct. at 2047. A district court by definition abuses its discretion when it makes an error of law. *Id.*

### B. Investigative Techniques

■ During the sentencing hearing and on appeal, the government argued that the district court lacked the authority to consider a downward departure, asserting that even if Coleman had in fact established a case of selective prosecution, there was no basis for a downward departure and the government was "unaware of any legal authority ... to depart below the applicable sentencing guideline range because of the method of investigation." Gov. Br. 13. Moreover, the government alleged that courts have repeatedly refused to allow downward departures based on governmental misconduct. The government, however, misunderstands the import of *Koon*.[3]

■ A downward departure is permitted when there is a mitigating factor that has not been adequately considered in formulating the Sentencing Guidelines. 18 U.S.C. § 3553(b); *see also* 1997 U.S.S.G. § 5K2.0. Because the Commission "did not adequately take into account cases that are, for one reason or another 'unusual,'" such factors will normally not be considered in the typical "heartland" of cases embodying the conduct that each guideline describes. *Koon*, 518 U.S. at 92–94, 116 S.Ct. at 2044. (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)). A court may grant a downward departure, then, if circumstances exist which take

not really a sentencing issue [ ], it's not a downward departure issue. If anything, it belongs in a motion to dismiss the indictment or something along those lines." J.A. at 119. Later she reiterated, "again you're really complaining about investigatory techniques and, again, that kind of goes to the selective enforcement issue." J.A at 120.

**3.** The government also overstates its position. Even before *Koon*, courts had, in some instances, granted downward departures based in part on improper actions of the government. For example, courts have utilized downward departures in cases where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted. *See, e.g., United States v. McClelland*, 72 F.3d 717, 724–25 (9th

Cir.), *cert. denied*, 517 U.S. 1148, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996); *United States v. Wise*, 976 F.2d 393 (8th Cir.1992). These courts applied U.S.S.G. § 5K2.12 as a basis for their decision. That section entitled "Coercion and Duress" considered the fact that a defendant may have committed an offense because of "serious coercion, blackmail or duress, under circumstances not amounting to a complete defense," an encouraged factor in downward departure determinations. *See* 1997 U.S.S.G. § 5K2.12. In addition, courts have granted motions to depart downward in cases of "sentencing entrapment" where the government has specifically induced defendants to commit more serious crimes in order to enhance their punishment. *See, e.g., United States v. Barth*, 990 F.2d 422, 424 (8th Cir.1993).

the case out of the typical "heartland" of cases embodied by the guideline. *Id.*The Supreme Court, adopting a test proposed by the First Circuit, stated that a court considering a departure should inquire:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

*Id.* at 95, 116 S.Ct. at 2045 (citation omitted). "If a factor is unmentioned in the Guidelines, the court *must,* after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* (citation omitted) (emphasis added).

 There are a potentially infinitesimal number of factors which may warrant a departure. *Koon* makes clear that a court may not categorically exclude the consideration of any one factor, and that to do so would be a transgression of the policymaking authority vested in the Commission. *Id.* at 105–07, 116 S.Ct. at 2050. A court is strictly limited to determining merely "whether the Commission has explicitly proscribed consideration of the factor," and if not, "the court must determine whether the factor, as occurring in the particular circumstances, takes the cases outside the heartland of the applicable Guideline." *Id.* at 109, 116 S.Ct. at 2051; *accord United States v. Mendoza,* 121 F.3d 510, 513 (9th Cir.1997); *United States v. Core,* 125 F.3d 74, 76–7 (2d Cir.), *cert. denied sub nom. Reyes v. United States,* —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998) ("[T]he Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate" and "absent express prohibition, a sentencing court is 'free to consider in an unusual case whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure' ") (citations omitted); *United States v. Brock* 108 F.3d 31, 34 (4th Cir.1997) ("[T]he unmis-

takable teaching of *Koon* is that only those factors on which the Commission has forbidden reliance ... *never* may provide an appropriate basis for departure. All others potentially may provide a basis for departure under appropriate circumstances.") (citations omitted); *United States v. Sherpa,* 97 F.3d 1239, 1244 (9th Cir.1996). The *only* factors which are so precluded from consideration are race, sex, national origin, creed, religion, and socio-economic status, U.S.S.G. § 5H1.10; lack of guidance as a youth, U.S.S.G. § 5H1.12; drug or alcohol dependancy, U.S.S.G. § 5H1.4; and economic hardship, U.S.S.G. § 5K2.12. All other factors which a defendant posits as evidence that a downward departure may be warranted must be considered by the district court utilizing the analysis described above and making a "refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Koon,* 518 U.S. at 98, 116 S.Ct. at 2046–47. To do otherwise, would directly contravene the express holding of *Koon* and "would run afoul of one of the important concerns articulated [by that decision]." *United States v. Olbres,* 99 F.3d 28, 34 (1st Cir.1996). Thus, we reiterate that there are an unquantifiable number of potential departure factors, including heretofore unknown factors that have not been previously considered by a court. Simply because a court has not directly ruled on the factor at issue does not excuse the district court from considering the factor as a potential basis for a downward departure.

Additionally, to the extent any of our prior cases have indicated that such factors as improper investigative techniques may never warrant consideration for a downward departure, we follow our sister circuits in finding that *Koon* overrules all such determinations. *See, e.g., United States v. Brock,* 108 F.3d at 35 (finding that the Fourth Circuit's prior holding that post-offense rehabilitation can never form a proper basis for departure has been effectively overruled by *Koon* ); *United States v. Sherpa,* 97 F.3d at 1244 (finding that the Ninth Circuit's prior holding that a judge may not at sentencing reconsider facts that have been necessarily rejected by the jury's guilty verdict overruled by *Koon* ).

Improper investigative techniques as a basis for departing downward, are not factors considered by the Guidelines.[4] Thus, the district court was required to examine the structure and theory of the relevant guidelines and the Guidelines as a whole to determine whether the grounds proffered by Coleman made the case sufficiently atypical to remove it from the "heartland." Erroneously believing that it did not have the authority to consider a downward departure, the district court discounted Coleman's request for such a departure, and thus abused its discretion.

■ The government also argues that in making the determination that a downward departure is warranted one or more of the statutory sentencing goals (deterrence, incapacitation, retribution and correction) must be implicated. We reject such a narrow application of the downward departure mechanism. The government completely misreads the Seventh Circuit case which it relies on for such a proposition. In *United States v. Pullen*, 89 F.3d 368 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997), the court noted that it had previously assumed that a departure from the guidelines range must be consistent with the statutory sentencing goals of deterrence, incapacitation, retribution and correction. *Id.* at 370. The court went on to note, however, that "the Supreme Court has since rejected this limitation on sentencing discretion." *Id.* Thus, the court merely determined that those goals were reasons in favor of departure, but by no means determinative. *Id.* We make no finding with respect to whether such goals do in fact give additional reasons in favor of departure, but merely note that the Sentencing Guidelines mention "nothing about requiring each potential departure factor to advance one of the specified goals." *United States v. Carter*, 122 F.3d 469, 473 (7th Cir.1997) (citing *Koon* ).

Courts have broadly interpreted *Koon* and considered downward departures in a number of cases in which a downward departure may not have been applicable previously.

See, e.g., *United States v. Brennick*, 134 F.3d 10, 14 (1st Cir.1998) (finding defendant's alleged intent to eventually pay withheld taxes to government could take the defendant's case out of the heartland of tax evasion cases); *United States v. Lipman*, 133 F.3d 726, 730 (9th Cir.1998) (finding district courts could have the authority to consider cultural assimilation as a basis for a downward departure); *United States v. Kapitzke*, 130 F.3d 820, 824 (8th Cir.1997) (affirming downward departure based on defendant's post offense rehabilitation efforts); *United States v. Brock*, 108 F.3d at 35 (remanding case for determination whether downward departure was warranted for post-offense rehabilitation); *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir.1996) (affirming downward departure on the basis of defendant's kidney failure and charitable good works); *United States v. Shasky*, 939 F.Supp. 695 (D.Neb. 1996) (granting downward departure because defendant was homosexual police officer). The circumstances present in this case may well justify a downward departure as well. Unlike the disparity between crack and powder cocaine which has been rejected as a sole justification for a downward departure, any disparity present in the case *sub judice* would not be a disparity created deliberately by the Sentencing Commission. *Cf. United States v. Weaver*, 126 F.3d 789, 793 (6th Cir.1997) (noting that the district court cannot rest a departure solely upon a disparity deliberately created by the Sentencing Commission that is not a result of atypical circumstances). We, however, decline to determine ourselves whether the factors alleged by Coleman are present to such a degree as to warrant a downward departure in this case. We leave that to the district court, which as noted in *Koon*, is in the best position to determine whether the case is so unusual as to warrant a departure. *See Koon*, 518 U.S. at 98–100, 116 S.Ct. at 2047 (noting that district court enjoys an "institutional advantage" over the appellate court in making such a determination).

---

4. We note that obviously, this differs from the prohibited factor of race which can never serve as a basis for a downward departure. Coleman's actual race is irrelevant, it is only the government's allegedly improper targeting and inducement of Coleman which is at issue.

### III. Cocaine Disparity

 Although this court has indicated in *United States v. Gaines*, 122 F.3d 324 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 396, 139 L.Ed.2d 310 (1997), that the disparity between crack cocaine and powder cocaine, even coupled with the Sentencing Commission's own belief that the disparity should be modified, is not in itself sufficient to take a crack cocaine case out of the "heartland," each case must still be individually considered. As the Supreme Court noted, § 5K2.0 is designed to allow district courts to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon,* 518 U.S. at 113, 116 S.Ct. at 2053. Thus, while the disparity alone may not indicate that a crack cocaine case is outside of the "heartland," the disparity coupled with the improper targeting and inducement of individuals to commit those crimes may well do so. Accordingly, we hold that the district court erred by failing to consider the cocaine disparity coupled with the particular circumstances of this case to determine whether the case was removed from the "heartland" of crack cocaine cases.

### IV.

For the reasons set forth above, we **REVERSE** and **REMAND** the district court's sentencing decision for reconsideration consistent with this opinion. We note that if the district court determines that there are no factors present to such an extraordinary degree as to warrant a departure, the sentence should not be disturbed.

MERRITT, Circuit Judge, concurring.

I concur in the opinion of Judge Jones for the Court which holds that the conduct of the agent in this case may be taken into account by the District Court in considering a downward departure. We do not hold that a downward departure is necessary, only that the District Court may consider such governmental conduct in arriving at its sentence.

Surely, if entrapment may be considered under *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), then similar administrative conduct that seeks to induce certain parolees to commit further crimes may also be considered in the sentencing potpourri. In the *Koon* case, the Supreme Court instructed lower courts to change the narrow, cramped method of considering downward departures that has prevailed in many courts in the past, including the Sixth Circuit. The Court flatly rejected the government's persistent, constipated condition on downward departures and provided a laxative that returns the concept back to the broader meaning that Justice Breyer and other drafters of the Guidelines had in mind in the first place. The somewhat irate tone of the dissent should be directed at the Supreme Court's rejection of the government view, not to Judge Jones' opinion, which faithfully follows the language and spirit of *Koon.*

The following language from *Koon* obviously means that a District Court may consider government conduct in the sentencing calculus on downward departures.

The Guidelines, however, "place essentially no limit on the number of potential factors that may warrant departure." *Burns v. United States,* 501 U.S. 129, 136–137, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). The Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." 1995 U.S.S.G. ch. I, pt. A, intro. comment. 4(b). Thus, for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policy-making authority vested in the Commission.

* * *

We conclude, then, that a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no-as it will be most of the time-the sentencing court must

determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline.

518 U.S. at 106–09, 116 S.Ct. at 2050–51.

ALAN E. NORRIS, Circuit Judge, dissenting.

In arriving at its decision today, the majority misconstrues the district court's findings and eviscerates our recent decision in *United States v. Gaines,* 122 F.3d 324 (6th Cir.1997), thereby ignoring this circuit's well-established rule that one panel of this court may not overrule a prior decision of another panel. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 839 (6th Cir.1997). I therefore dissent.

In *Gaines,* we were asked to decide whether a district court has the statutory authority to depart downward from the Sentencing Guidelines on the ground that the Sentencing Commission, as opposed to Congress, decided that the 100:1 quantity ratio for powder and crack cocaine should be eliminated. *Gaines* at 329. We held that a district court lacks that authority. *Id.* at 331. In so doing, we aligned our court with every other circuit that has decided the issue.

By its decision today, the majority essentially renders meaningless our opinion in *Gaines.* Although it concedes that the disparity in treatment of crack and powder cocaine alone is not sufficiently powerful to remove a case from the "heartland" of drug offenses, the majority holds that the 100:1 ratio, coupled with evidence of "improper targeting and inducement" may well be enough to allow for a downward departure pursuant to *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The majority arrives at this conclusion even though the district court noted that the evidence proffered in support of Coleman's argument that he was improperly targeted was inconsequential.

Most troubling is the impact today's holding will have on future litigation. The hold-

ing seems to say that two legally insufficient grounds for a downward departure—in this case the ratio and alleged targeting—can add up to a sufficient ground. Not only do I disagree with this conclusion but I can only imagine the Pandora's box of meritless couplings that will be brought before this court in an attempt to circumvent otherwise insufficient arguments.

Moreover, I do not agree with the majority's conclusion that the district court did not properly consider Coleman's request for a downward departure based upon the "investigative techniques" employed by the ATF. The majority bases its conclusion upon its view that the district court "found that Coleman's argument was not a sentencing issue, but instead a selective prosecution issue and thus an improper legal basis for a downward departure." A review of the record points to a different conclusion. The district court initially observed that it thought the argument regarding the ATF's investigative techniques was "not a downward departure issue" but more properly a selective prosecution issue that should have been raised in a motion to dismiss.[1] Coleman's attorney then reminded the court that he was not arguing selective prosecution but was instead asking for a downward departure:

> [T]his is not a claim of selective prosecution, and the reason it was not brought by motion to dismiss indictment is we are not claiming this as a case of selective prosecution.... It's more of a case of selective law enforcement.... The reason this is a grounds for departure is simply because this takes this case out of the heartland of your typical drug case. That is where perhaps there's someone who is actively involved in dealing narcotics and the government then investigates and catches him in the act. This is a case where Mr. Secretti was out soliciting for drug cases and firearm cases.... [T]he departure section in the guidelines is not meant to be an all-inclusive section, and I think the courts have been inclined to look at the various factors that have been listed by the

---

1. This preliminary exchange from the sentencing hearing is the same one alluded to in the first paragraph of the Discussion section in the majority opinion, including footnote two. The majori-

ty, however, seems unwilling to consider the subsequent dialogue between Coleman's attorney and the court.

Sentencing Commission in the original guidelines, but the [Guidelines also allow] that if there is a circumstance, mitigating circumstances of a kind that is not included in your normal case, your general case, that the Court can consider that for departure, and it's strictly a matter for discretion.

The district court then proceeded to consider the merits of that argument, announcing:

I understand that the guidelines make exceptions for exceptional circumstances but I think there, I think you need more to bring this into that realm than your assertion that Mr. Coleman was being solicited by Agent Secretti. In fact, you know the government's position is exactly the opposite, and there isn't enough to warrant having a hearing on it. I mean, all you've given me as an exhibit here is the business card, no affidavit—nothing in terms of hard evidence of this, and even if you did, I still don't—I still don't see it as an issue which would entitle this defendant to a departure, so motion denied.

It is apparent that the district court considered whether Coleman's assertion amounted to a proper basis for a downward departure but concluded that his claim was so lacking in merit that it deserved summary rejection[2]. The court did not, as asserted by the majority, believe it "lacked the authority and discretion to depart downward." The majority notes that its conclusion is reached under our abuse of discretion standard of review. I fail to see how the district court's conclusion can be said to be the product of an abuse of discretion when one considers the Supreme Court's admonition that sentencing courts must "bear in mind the Commission's expectation that departures based upon grounds not mentioned in the Guidelines will be highly infrequent." *Koon*, 518 U.S. at 96, 116 S.Ct. at 2045 (punctuation omitted).

Accordingly, I am unable to say that the district court abused its discretion when it acknowledged Coleman's argument and then rejected it as baseless.

For these reasons, then, I respectfully dissent.

---

2. Surely, the record before us lends little support to the thought that the ATF needed to employ improper "targeting" methods to "induce" Coleman to deliver it crack cocaine. Coleman sold crack cocaine to an ATF special agent on five separate occasions. The five occurrences spanned more than eight months, as Coleman was incarcerated for nearly seven of those months by the State of Michigan for violation of an earlier parole for armed robbery.